IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

IN RE:

J. ALLAN STEEL COMPANY,                  :     Bankruptcy No. 03-23846 BM
                                         :
                                         :
            Debtor                       :     Chapter 11
*******************************:
OFFICIAL COMMITTEE OF                    :
UNSECURED CREDITORS OF                   :
J. ALLAN STEEL COMPANY,                  :
                                         :
            Plaintiff                    :
                                         :
     v.                                  :     Adversary No. 04-2014 BM
                                         :
NUCOR-YAMATO STEEL COMPANY,              :     [Related To Doc. Nos. 30 and 56]
                                         :
            Defendant                    :

## MEMORANDUM OPINION

This case is on remand from the U.S. District Court for the Western District of Pennsylvania. In a sharply worded memorandum opinion, the reviewing court identified various considerations which it directed this court to address so that it could complete appellate review of our earlier decision.

We note that the reviewing court has set the bar for the trial court to a level difficult to sustain. On one hand, issues are raised for this trial court to discuss that the parties, i.e., the defendant having the burden of proof, seemed to consider at best tangential. Additionally, the reviewing court demands we discuss lower court opinions which do not have precedential gravitas in this venue. We are reminded of the old saw among bankruptcy practitioners who "kid on the square" about being able to find some

AO 72A
(Rev. 8/82)

precedent somewhere within the four corners of the United States to prove most any point.

By being held to that standard by a reviewing court, who apparently sees the facts differently than does the trial court, our task has been made far more difficult.

In spite of the above, we obviously will obey its mandate.

– I –

Exercising the authority granted to it in debtor's confirmed plan of reorganization, the Official Committee of Unsecured Creditors brought this adversary action against Nucor-Yamato Steel Company in accordance with 11 U.S.C. § 547(b) of the Bankruptcy Code to recover certain alleged preferential payments debtor had made to Nucor-Yamato Steel Company during the ninety-day preference period.

Nucor-Yamato Steel Company asserted as a defense that the payments in question fell within the scope of the ordinary-course exception for preferences set forth at § 547(c)(2) of the Bankruptcy Code.

We determined after a trial that Nucor-Yamato Steel Company had failed to satisfy its burden of proof with respect to §§ 547(c)(2)(B) and (c)(2)(C) and accordingly entered a judgment in favor of the Committee and against Nucor-Yamato Steel Company in the amount of $837,061.90.

Nucor-Yamato Steel Company appealed our decision to the District Court, which concluded that it was not in a position to say whether this court had considered certain evidence offered at trial and remanded the case to this court for further proceedings.

The District Court directed us to discuss whether we had considered various matters in arriving at our decision. Apparently the District Court's question relates to whether we judged the facts in a clearly erroneous fashion and/or whether we had any basis for our factual findings.

We will attempt to address those matters in this memorandum opinion.

– II –

According to the reviewing court, we should have considered the following factors when evaluating the § 547(c)(2)(B) portion of Nucor-Yamato Steel Company's defense: (1) the length of time the parties engaged in the type of dealing at issue; (2) whether the subject transfers were in amounts greater than were usually paid; (3) whether payments during the preference period were tendered in an amount different than previous payments; (4) whether there was any unusual action taken by debtor or the creditor to pay or collect the debt owed; and (5) whether the creditor did anything to gain an advantage in light of debtor's deteriorating financial condition. As authority for considering these apparent requirements, the District Court cited to *In re First Jersey Securities*, 180 F.3d 504, 512 (3d Cir. 1999); also *In re Global Tissue*, 302 B.R. 808, 812 (Bankr. D. Del. 2003).

*In re First Jersey Securities* in our estimation does not *mandate* that a trial court address each of the above factors in every instance when determining whether transactions were "ordinary" for purposes of § 547(c)(2)(B). Although the Third Circuit stated that the timing, the amount and the manner in which a transaction was paid are

"relevant", it did not indicate that failing to address any of them constituted reversible error.

Nucor-Yamato unquestionably had the burden of proof with respect to § 547(b)(2)(B) and § 547(c)(2)(3). In re First Jersey Securities, 180 F.3d at 512. To the extent that the above factors must be considered, we do not believe that Nucor-Yamato offered credible evidence which on balance established that § 547(b)(2)(B) was satisfied. For instance, aside from bare conclusions, Nucor-Yamato offered little or no credible evidence proving that payments debtor tendered during the preference period were not in amounts greater than previous payments. Nucor-Yamato also offered little or no evidence establishing that it did not seek to gain an advantage in light of debtor's deteriorating financial condition.

As we shall see, even if Nucor-Yamato had offered favorable evidence concerning these factors, credible evidence offered at trial concerning factors (1) and (4) outweighed evidence Nucor-Yamato may have offered concerning the other factors.

As for *In re Global Tissue*, which came out of the District of Delaware, we also do not read it as requiring that all of the above factors be addressed. Even if it did, such a holding is not binding precedent on this court.

The most that can be said is that the above-cited factors *may* in certain instances be relevant for purposes of § 547(c)(2)(C) and ought to be considered to the extent that the parties emphasized them and considered them.

AO 72A
(Rev. 8/82)

We strongly suspect, however, that the District Court is inclined to regard our failure in arriving at our decision to expressly address factors (2) through (5) as reversible error. With that in mind, we will say something about these factors.

Before doing so, however, it should be noted that we explicitly addressed only the first of the above factors because we were of the opinion that Nucor-Yamato Steel Company's failure to provide records documenting the payment history for nearly twelve years of its fourteen-year business relationship with debtor to be of such significance that it outweighed in significance all of the other factors combined. It led us to regard the records Nucor-Yamato Steel Company did provide with suspicion and to question whether they truly reflected the course of dealing between Nucor-Yamato Steel Company and debtor during their business relationship.

In arriving at the conclusion that Nucor-Yamato Steel had not satisfactorily established § 547(c)(2)(B), we also gave weight to testimony offered at trial which indicated there was unusual activity on the part of debtor to pay what it owed Nucor-Yamato Steel Company. We concluded, in other words, that factor (4) also worked against Nucor-Yamato Steel Company's assertion of § 547(c)(2) as an affirmative defense.

Mr. Frank Quigley, whose testimony we will consider in greater detail in a moment, admitted on cross-examination to having stated in a deposition in anticipation of trial that before filing a chapter 11 petition, debtor had decided - presumably at the direction of Nucor-Yamato Steel Company – that it would promptly pay for any steel it

received from Nucor-Yamato Steel Company *plus something additional* to reduce its total indebtedness to Nucor-Yamato Steel Company. We regarded this as a significant departure from debtor's previous payment practice. Debtor apparently agreed to this change to ensure that Nucor-Yamato Steel Company would continue shipping steel to debtor during the ninety-day preference period. At trial, and without explanation, he simply executed an about-face.

Taking this admission into consideration along with Nucor-Yamato Steel Company's failure to document debtor's payment history for some twelve of the fourteen years during which they did business, we viewed it as unnecessary to address factors (2), (3) and (5). Factors (1) and (4) established that Nucor-Yamato Steel Company had failed to establish that § 547(c)(2)(B) was satisfied regardless of how factors (2), (3) and (5) turned out.

– III –

The District Court also took us to task for failing to consider testimony by Mr. Quigley on direct examination which purportedly corroborated testimony offered by Nucor-Yamato Steel Company's credit manager. According to the District Court, Mr. Quigley also testified that Nucor-Yamato Steel Company did not make different payment arrangements with debtor during the preference period.

We did not regard Mr. Quigley's testimony, which lasted but a few brief minutes and was elicited by mostly leading questions from counsel for Nucor-Yamato Steel Company, as corroborating the testimony of Ms. Barger. To the contrary, we viewed it

as "puppet-like" with counsel to defendant pulling a string and the witnesses giving a favorable answer. Mr. Quigley, we previously noted, admitted on cross-examination to having testified in his deposition that, during the preference period, debtor took the "unusual" step of promptly paying Nucor-Yamato Steel Company for each shipment of steel plus something extra to reduce the past-due outstanding balance. Debtor, we concluded, did so to placate Nucor-Yamato Steel Company and to ensure that Nucor-Yamato Steel Company would continue shipping steel to it. Instead of corroborating Ms. Barger's testimony, we viewed Mr. Quigley's testimony as undermining it. In an effort to avoid the above very unkind remarks, we determined not to mention Mr. Quigley's testimony in the memorandum opinion we issued. This remand requires we make our determination public.

The is yet another reason why we did not give much credence to Mr. Quigley's testimony. Mr. Quigley was not the "contact with Nucor Yamato Steel; another individual at Debtor's who had a long-standing business relationship with Nucor-Yamato, was. We might have found testimony by that other individual on the issues more credible. For reasons about which we can only speculate, that individual did not testify.

To the extent one might view Mr. Quigley's testimony as corroborating the testimony of Ms. Barger, we gave it little or no weight. As we noted, his testimony on direct examination was in response to mostly leading questions by counsel to Nucor-Yamato Steel Company. The "correct" answer was telegraphed to Mr. Quigley by counsel for Nucor-Yamato Steel Company and therefore was not persuasive. To the contrary,

AO 72A
(Rev. 8/82)

his testimony was reminiscent of the scene from the movie "Chicago", wherein the witness sat on the lap of the lawyer who pulled strings to move the witness's body parts. The mouth moved but the voice heard and the answers recited were that of the lawyer.

From the above we do not wish to indicate a hostility to trial preparation. To the contrary, we favor it. However, when trial preparation crosses the line to dictating what a witness should say under oath, it must be rejected.

Nor do we know the reason for this salient about-face. The defendant, who called and somehow had a claim to Mr. Quigley's testimony as a friendly as opposed to hostile witness, almost certainly knows the reason. It was telling that this question wasn't asked. The plaintiff, who was surprised, didn't know the answer to the question and didn't ask.

At this juncture we are on the horns of a dilemma. If we speculate as to the reason for this about-face, we are subject to criticism. If we do not speculate, we leave a large hole and again are subject to criticism. At this point we choose to speculate, offering our best reasoning after hearing twenty years of similar cases.

We took Mr. Quigley's testimony on direct examination with a large grain of salt. Mr. Quigley, whose employment by debtor as its CFO terminated some three months after it descended into bankruptcy, was employed at the time of trial by another steel processor in the same type of business as debtor. We do not know whether Mr. Quigley was subpoenaed or volunteered to testify on behalf of Nucor-Yamato Steel Company. Be that as it may, we were suspicious that Mr. Quigley testified as he did on direct

AO 72A
(Rev. 8/82)

examination to curry favor with Nucor-Yamato Steel Company, for the benefit of his present employer, which as a steel processor depends on maintaining good relations with steel producers.

– IV –

The District Court also took us to task for not explaining why records offered at trial for the twenty-seven months preceding the preference period were not sufficient to establish what was "ordinary" as between debtor and Nucor-Yamato Steel Company for purposes of § 547(c)(2)(C). Other courts, it pointed out, had accepted as sufficient in this regard payment records relating only to a portion of the duration of debtor's business relationship with a creditor. *Grant v. Cosec International, Inc. In re L. Bee Furniture Company, Inc.)*, 230 B.R. 185 (Bankr. M.D. Fla. 199) (finding that a five-year documentation of a sixteen-year relationship sufficed); *McCord v. Venus Foods, Inc. (In re Yan Lik Foods Corp.)* 185 B.R. 103 (Bankr. E.D. N.Y. 1995 (finding that a two-year period of documentation of a nine-year relationship sufficed).

We note that Nucor-Yamato Steel Company only briefly visited in its trial brief the question whether a payment history going back some two years prior to the preference period is sufficient to establish what is "ordinary" for purposes of § 547(c)(2)(B). Nucor-Yamato Steel Company identified, without any further discussion, a few cases in which a payment history shorter than two years sufficed.

Nucor-Yamato Steel Company did not, however, mention the two just-cited cases in its trial brief. We do not know whether it did so in its appellate brief or whether the

AO 72A
(Rev. 8/82)

District Court found them on its own. Our own research, which is severely limited by our scarce resources vis-à-vis staff personnel, as well as the avalanche of cases recently filed, does not indicate that any other court has cited to them as authority for the proposition in question.

We did not reject Nucor-Yamato Steel Company's position because we thought that a period of two years was insufficient as a matter of law. There is no bright-line test of which we are aware for determining how long a payment history is required for purposes of § 547(c)(2)(B). We instead rejected Nucor-Yamato Steel Company's position on this point in light of other circumstances present in this case. In our estimation, such a determination depends on a fact-intensive examination of the specific facts of each case.

To prevail with respect to § 547(c)(2)(B), a creditor must establish a "baseline of dealings" to enable the trial court to compare payment practices during the preference period with the parties' prior course of dealing. *Cassirer v. Herskowitz (In re Schick)*, 234 B.R. 337, 348 (Bankr. S.D. N.Y. 1999). When determining whether the exception at §547(c)(2)(B) applies, a court should consider *the entire course of dealing of the parties*, including the history of their dealings, timing, amount, and circumstances surrounding the transfers. *Katz v. L. Roger Wells (In re Wallace's Bookstores, Inc.)*, 316 B.R. 254, 264 (Bankr. E.D. Ky. 2004). Analysis of debtor's payment history is "a significant and guiding factor" in this regard; it is not, however, dispositive in every instance. Other factors may be considered according to their appropriate weight under the circumstances. *Concast*

*Canada, Inc. v. Laclede Steel Co. (In re Lacelde Steel Co.)*, 271 B.R. 127, 132 (8th Cir. BAP 2002).

We suspect that the District Court would have found in favor of Nucor-Yamato Steel Company had it tried this case itself. After observing Nucor-Yamato Steel Company's witnesses testify, however, we were not satisfied that the records going back only twenty-seven months prior to the onset of the preference period in this case provided an adequate "baseline" for debtor's course of dealings with Nucor-Yamato Steel Company throughout their relationship. The absence of records for the initial twelve years or so of their business relationship in our estimation was so "curious" that it led us to seriously question whether the records Nucor-Yamato Steel Company provided accurately reflected the history of their business dealings throughout the course of their business relationship. Nucor-Yamato Steel Company also did not establish to our satisfaction when debtor "hit the skids" financially. For all that is known, this may have occurred before the period covered by the records Nucor-Yamato Steel Company did provide. If so, the records Nucor-Yamato Steel Company provided do not accurately depict the entire course of their dealings with one another.

An appropriate order shall issue.

_____
**BERNARD MARKOVITZ**
U.S. Bankruptcy Judge

Dated: 4-24-06

- 11 -

FILED
APR 24 2006
CLERK, U.S. BANKRUPTCY COURT
WEST. DIST. OF PENNSYLVANIA

AO 72A
(Rev. 8/82)

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

IN RE:

**J. ALLAN STEEL COMPANY,**            :    Bankruptcy No. 03-23846 BM
                                       :
                                       :
              **Debtor**                :    Chapter 11
*******************************:
**OFFICIAL COMMITTEE OF**              :
**UNSECURED CREDITORS OF**             :
**J. ALLAN STEEL COMPANY,**            :
                                       :
              **Plaintiff**             :
                                       :
       v.                              :    Adversary No. 04-2014 BM
                                       :
**NUCOR-YAMATO STEEL COMPANY,**        :
                                       :
              **Defendant**             :

## ORDER OF COURT

**AND NOW** this 24th day of April, 2006, it hereby is **ORDERED, ADJUDGED and DECREED** that this memorandum opinion be and hereby is issued in accordance with the order of the District Court dated December 8, 2005.

It is **SO ORDERED**.

_____
**BERNARD MARKOVITZ**
U.S. Bankruptcy Judge

cm:    Hon. Donetta W. Ambrose, Chief District Court Judge
       Katey Finnegan, Esq.
       Scott M. Tyler, Esq.
       Charles J. Vollmer, Esq.
       Office of United States Trustee

FILED

APR 2 4 2006

CLERK, U.S. BANKRUPTCY COURT
WEST. DIST. OF PENNSYLVANIA

AO 72A
(Rev. 8/82)